UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ERNEST F. FRANKLIN, II,

         Plaintiff,

 -against-            9:18-CV-0896 (LEK/ATB)

CHENANGO COUNTY SHERIFF'S
OFFICE, *et al.*,

         Defendants.

## MEMORANDUM-DECISION AND ORDER

**I. INTRODUCTION**

Pro se plaintiff Ernest F. Franklin, II commenced this civil rights action pursuant to 42 U.S.C. §§ 1983 and 1985 on August 1, 2018. Dkt. No. 1 ("Complaint"). Plaintiff, who is incarcerated at Chenango County Correctional Facility ("Chenango C.F."), asserts claims against the Chenango County Sheriff's Office, Chenango County, and the Town of Norwich (the "Municipal Defendants"), as well as the Commissioner of Corrections,[1] Sheriff Ernest Cutting, Lieutenant Chris Miles, Sr., and Correctional Officers Reese, Matthews, Cole, Rifanberg and Torre (the "Individual Defendants"). Plaintiff has not paid the fee for this action, and seeks leave to proceed in forma pauperis ("IFP"). Dkt. No. 6 ("IFP Application").[2] Plaintiff has also filed a

---

 [1] Although Plaintiff does not expressly name the Commissioner of Corrections as a defendant, several of Plaintiff's allegations relate to him. See, e.g., Compl. at 2–3. Therefore, bearing in mind the leniency properly shown to pro se plaintiffs, the Court will construe Plaintiff's Complaint as naming the Commissioner.

 [2] Plaintiff's initial application to proceed IFP was denied as incomplete, leading to an administrative closure of this action. Dkt. No. 5. However, after Plaintiff timely and properly re-filed his IFP Application, this action was re-opened. Dkt. No. 9.

motion to appoint counsel, Dkt. No. 3 ("Motion for Counsel"), as well as a motion for a preliminary injunction, Dkt. No. 4 ("Motion for Preliminary Injunction").

## II.     IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." Cash v. Bernstein, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010), adopted by 2010 WL 5222126 (S.D.N.Y. Dec. 21, 2010). Upon review, the Court finds that Plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in this District. See Dkt. No. 7 ("Inmate Authorization Form"). Plaintiff's IFP Application is therefore granted.[3]

## III.    INITIAL SCREENING

Having found that Plaintiff meets the financial criteria for commencing this action IFP, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of §§ 1915(e) and 1915A. Section 1915(e)(2) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or

---

[3] Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," he has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. § 1915(g). Based upon the Court's review of Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that Plaintiff has accumulated three strikes for purposes of § 1915(g).

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." § 1915(e)(2)(B).[4]

Similarly, under § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." § 1915A(b); see also Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999) (noting that § 1915A applies to all actions brought by prisoners against government officials even when the plaintiff paid the filing fee).

When reviewing a complaint, a court must also look to the Federal Rules of Civil Procedure. Rule 8 provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Powell v. Marine Midland Bank, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (emphasis omitted) (quoting Brown v. Califano, 75 F.R.D. 497, 498 (D.D.C. 1977)). That said, in reviewing a pro se complaint, the Court must show liberality toward pro se litigants and exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse

---

[4] An action is frivolous if the complaint "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).

3

party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983) (citations omitted).

Therefore, a court should not dismiss a complaint if the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

## IV. SUMMARY OF THE COMPLAINT

The following facts are set forth as alleged in the Complaint.

Plaintiff is a pretrial detainee. Compl. at 2. Since arriving at Chenango C.F., Plaintiff has "had numerous issu[es] with cert[a]in officers pertain[in]g to [his] filing numerous civil complaint[s] against th[e] facility for the violations they have made toward [him]." Id. The "civil violation[s]" that Plaintiff has experienced "arise[] from [his] crime," and include harassment, threats, belittlement, defamation, and mistreatment "by numerous officers." Id. For example, although Plaintiff "submitted paperwork to become a pod worke[r]," he was denied the

4

opportunity "to do anything within the pod or otherwise" because of "bias-based profiling" stemming from the nature of his charged crime. Id. In addition, unidentified correctional officers have "talk[ed] about [Plaintiff's] charge[s with] other officers" as well as "others outside of the facility." Id. The Defendants have also "undu[ly] influ[e]nce[d]" the detectives called to testify against Plaintiff during his criminal trial and have "persuade[d]" them to alter their testimony, thereby denying Plaintiff access to a fair trial. Id. Finally, Plaintiff alleges that the Commissioner of Corrections, who used to work as Sheriff of Chenango County and therefore has "prior knowledge of the in[]s and out[]s of the facility," has been able to "cover[] for any complaints that do get into his office." Id.

Construed liberally, Plaintiff asserts (1) claims under § 1983 for retaliation, invasion of privacy, harassment, and the improper processing of inmate grievances; (2) claims under § 1985 for conspiracy to deter witnesses in Plaintiff's criminal trial from testifying truthfully; and (3) state law claims for defamation. Id. at 2–3. Plaintiff seeks monetary damages and injunctive relief, and has named several parties as defendants. Id. at 1–3.

## V. DISCUSSION

"Section 1983 establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." German v. Fed. Home Loan Mortg. Corp., 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (quoting Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 508 (1990)). Therefore, § 1983 "itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

### A. The Municipal Defendants

#### 1. *Claims Against the Chenango County Sheriff's Office*

"[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (dismissing § 1983 claim brought against the Lynbrook Police Department). As a result, because the Chenango County Sheriff's Office "is an administrative arm of [Chenango] County, without a legal identity separate and apart from the County, it lacks the capacity to be sued." Lukes v. Nassau Cty. Jail, No. 12-CV-1139, 2012 WL 1965663, at *2 (E.D.N.Y. May 29, 2012). However, bearing in mind Plaintiff's pro se status, the Court will construe Plaintiff's claims against the Chenango County Sheriff's Office as if they had been brought against Chenango County and will evaluate them accordingly.

#### 2. *Claims Against Chenango County and the Town of Norwich*

Municipal liability under Section 1983 is determined with reference to Monell v. Department of Social Services, 436 U.S. 658 (1978). "Monell does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006). Therefore, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell, 436 U.S. at 691. Only when the municipality, through the "execution of [its] policies or custom," actually deprives an individual of his constitutional

6

rights, is it liable for the injury. Id. at 694. Thus, to successfully state a claim for Monell liability, "a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." Missel v. Cty. of Monroe, 351 Fed. App'x 543, 545 (2d Cir. 2009) (citing Vives v. City of New York, 524 F.3d 346, 350 (2d Cir. 2008)).

The vast majority of Plaintiff's Complaint focuses on the actions of individual correctional officers employed by Chenango County, which are not plausibly alleged to be the result of a policy or custom of either Chenango County of the Town of Norwich. The lone exception is Plaintiff's discussion of the Commissioner of Corrections, who has allegedly used his position to cover up any complaints that reach his office. Compl. at 2–3. However, even if the Court found that Plaintiff's allegations regarding the Commissioner sufficiently pled the existence of a policy or custom which could give rise to a cognizable § 1983 claim, that policy would exist at the state—rather than the municipal—level.

The Court therefore finds that Plaintiff's Complaint fails to plead that a "constitutional violation took place pursuant [] to a formal course of action officially promulgated by" either Chenango County or the Town of Norwich, or by an individual "with policymaking authority" for those entities. Missel, 351 Fed. App'x at 545 (citation omitted). Accordingly, Plaintiff's claims against Chenango County and the Town of Norwich are dismissed without prejudice.

## B. The Individual Defendants

### 1. *Personal Involvement—Section 1983*

Courts in the Second Circuit have widely held that "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" Austin v. Pappas, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986)). "Pleadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim." Ying Li v. City of New York, 246 F. Supp. 3d 578, 598 (E.D.N.Y. 2017) (citing Wright v. Orleans Cty., No. 14-CV-0622, 2015 WL 5316410, at *13 (W.D.N.Y. Sept. 10, 2015) ("[G]roup pleading is insufficient for purposes of Rule 8(a)(2) which requires a short and plain statement of the claim showing that the pleader is entitled to relief." (internal quotation marks and citation omitted))).

With a few exceptions,[5] the Complaint fails either to state which of the Individual Defendants were involved in the alleged unlawful conduct or to describe the extent of their involvement. As a result, the Court cannot evaluate whether most of the officials named as

---

[5] Most notably, the Complaint specifically describes actions undertaken by the Commissioner of Corrections, who Plaintiff accuses of improperly processing inmate grievances. Compl. at 2–3. In addition, one of the final paragraphs of the Complaint singles out Reese as a primary offender, by requesting "an order declaring that the defendant Officer Reese ha[s] acted in violation of the United States Constitution." Id. at 3. However, neither that paragraph nor the rest of the Complaint explain what Reese did to warrant such individualized treatment.

defendants were personally involved in the alleged constitutional deprivation of Plaintiff's rights.[6]

In light of the foregoing, the Court will dismiss without prejudice all of Plaintiff's claims as brought against Cutting, Miles, Reese, Matthews, Cole, Rifanberg, and Torre. However, anticipating that Plaintiff will accept the Court's invitation to amend his pleadings, the Court will still address the merits of all of the various claims brought by Plaintiff against the Individual Defendants.

### 2. Failure to Process Inmate Grievances—Section 1983

Plaintiff alleges that the Commissioner of Corrections "covers for any complaints that [] get into his office and are to be looked into," Compl. at 2, implying that the Commissioner improperly disregards and fails to process the inmate grievances he receives. "The First Amendment protects a prisoner's right to meaningful access to the courts and to petition the government for the redress of grievances." Shell v. Brzezniak, 365 F. Supp. 2d 362, 369 (W.D.N.Y. 2005). "However, inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures do[] not give rise to a cognizable § 1983 claim." Id. at 369–70 (citing Cancel v. Goord, No. 00-CV-2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001)).

---

[6] Although Plaintiff alleges that both Cutting and Miles occupied supervisory positions at Chenango C.F., such an allegation is not in itself sufficient to plausibly suggest that either of those individuals were personally involved in an alleged constitutional deprivation. See Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987) ("Absent some personal involvement by [a supervisor] in the allegedly unlawful conduct of his subordinates, he cannot be held liable under section 1983.").

9

Therefore, Plaintiff's claim that the Commissioner of Corrections failed to properly process inmate grievances does not rise to the level of a constitutional deprivation, and will be dismissed without prejudice.

    *3. Retaliation—Section 1983*

The Complaint states that "numerous issu[es]" have arisen between Plaintiff and the Defendants as a result of multiple "civil complaint[s]" that Plaintiff has filed against Chenango C.F., Compl. 2, implying the possibility of retaliatory conduct by the Defendants. Elsewhere in the Complaint, Plaintiff also notes that he used "the prisoner grievance proce[]dure" available in Chenango C.F., but that his grievances "have been denied at all levels." Id.

"Courts properly approach prisoner retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (quoting Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001)). When asserting a retaliation claim pursuant to the First Amendment, a plaintiff must establish "'(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action.'" Trisvan v. Annucci, 284 F. Supp. 3d 288, 302 (E.D.N.Y. 2018) (quoting Davis, 320 F.3d at 352). However, "a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

It is well settled that both the filing of lawsuits and the filing of grievances by a prisoner against correctional officers constitutes protected conduct for the purposes of First Amendment claims. See Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) ("Prisoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right." (citation omitted)); Baskerville v. Blot, 224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002) ("A prisoner's filing of a grievance against a corrections officer is protected by the First Amendment and retaliation in response to such a grievance is an actionable claim." (citations omitted)). However, the Complaint includes no non-conclusory allegations to plausibly suggest that any of the Individual Defendants knew about the grievances filed by Plaintiff, or that their alleged adverse behavior was motivated by Plaintiff's protected activity. Therefore, Plaintiff has failed to plead a causal connection between his protected conduct and the Individual Defendants' adverse actions, and his retaliation claims will be dismissed. See Smith v. Miller, No. 15-CV-9561, 2017 WL 4838322, at *7 (S.D.N.Y. Oct. 23, 2017) ("While there may exist instances in which retaliation claims may be established against defendants who were not personally involved in the original incident, at a minimum, plaintiffs must allege that such defendants have personal knowledge of the protected activity that purportedly motivated the retaliatory conduct.").

    *4. Invasion of Privacy—Section 1983*

Plaintiff accuses the Individual Defendants of "talking about [Plaintiff's] charge to other officers . . . [and] to others outside of [Chenango C.F.]." Compl. at 2. "Generally, disclosure of legal documents, whether it be charging documents, convictions, case law, legislation, or other legal research, is not a violation of privacy because the documents are all a matter of public

record." Davis v. Chapple, No. 07-CV-321, 2009 WL 6312502, at *9 n.9 (N.D.N.Y. Nov. 4, 2009) (citations omitted), adopted by 2010 WL 985763 (Mar. 16, 2010); see also Swift v. Tweddell, 582 F. Supp. 2d 437, 447 (W.D.N.Y. 2008) (finding that a correctional officer's disclosure to other inmates "of the nature of the crime with which plaintiff had been charged . . . did not violate any of [the] plaintiff's privacy rights, since the information in question was not privileged or otherwise protected"). Thus, to the extent that Plaintiff has attempted to assert invasion of privacy claims against the Individual Defendants based on the disclosure of his criminal charges, those claims are dismissed.

*5. Harassment—Section 1983*

Construed liberally, the Complaint alleges that the adverse actions undertaken by the Individual Defendants against Plaintiff—for example, their public disclosure of the nature of Plaintiff's alleged crimes—constitute an actionable form of harassment. Compl. at 2. However, "verbal harassment . . . alone, 'unaccompanied by any injury[,] no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." Aziz Zarif Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (quoting Del Carpio v. Walker, No. 95-CV-1502, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997). This is true "regardless of whether the inmate is a pretrial detainee or [a] sentenced prisoner." Ruffino v. Murphy, No. 09-CV-1287, 2010 WL 1444562, at *4 (D. Conn. Apr. 12, 2010). In his Complaint, Plaintiff does not allege that he suffered any injury as a result of the Individual Defendants' alleged verbal harassment. Therefore, Plaintiff's harassment claims are also dismissed.

### 6. Conspiracy to Deter Truthful Testimony—Section 1985

Plaintiff's Complaint alleges that the Defendants "undu[ly] influ[e]nce[d]" the detectives that have testified against Plaintiff during his ongoing criminal proceedings, "persuad[ing]" them to alter their testimony. Compl. at 2. The first clause of § 1985(2), which applies to federal court proceedings, prohibits "two or more persons . . . [from] conspir[ing] to deter, by force, intimidation, or threat, any party or witness in any court of the United States from . . . testifying to any matter pending therein, freely, fully, and truthfully." However, even when construed liberally, Plaintiff's allegations in no way indicate that the Individual Defendants entered into a conspiracy with one another, or that they used force, intimidation, or threats to influence the testifying detectives. Although Plaintiff does claim that the Individual Defendants brought "undue influ[e]nce" to bear, the Complaint also states that their intention was to "persuade"—rather than to force, intimidate, or threaten—the detectives to alter their testimony. Therefore, the Court finds that Plaintiff has failed to state a viable § 1985 claim, and that claim will be dismissed.

### 7. Defamation—New York State Law

Plaintiff's Complaint also alleges that the Individual Defendants' disclosure of Plaintiff's criminal charges, both to other correctional officers and to individuals not affiliated with Chenango C.F., constitutes defamation. Compl. at 2. "Generally, defamation is an issue of state, not of federal constitutional, law." Vega v. Lantz, 596 F.3d 77, 81 (2d Cir. 2010) (citing Lauro v. Charles, 219 F.3d 202, 207 (2d Cir. 2000). And while it is true that "[f]ederal district courts have supplemental jurisdiction over state-law claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . this is

traditionally a doctrine of discretion, not of plaintiff's right." Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (internal quotation marks and citations omitted). Accordingly, because all of Plaintiff's federal claims have been dismissed, the Court will not exercise supplemental jurisdiction over Plaintiff's state law defamation claims at this time.

**C. Leave to Amend**

After its liberal review of the Complaint, the Court is not able to discern either a factual or legal basis for this action. However, in light of Plaintiff's pro se status, the Court will afford him the opportunity to amend all of his claims except for those brought against the Chenango County Sheriff's Office, which are dismissed with prejudice. See Gomez v. United States Auto. Assoc. Fed. Savs. Bank, 171 F.3d 794, 796 (2d Cir. 1999) ("[A] *pro se* plaintiff who is proceeding *in forma pauperis* should be afforded [an] opportunity . . . to amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, than an amended complaint would succeed in stating a claim."); Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (finding that an opportunity to amend is not required where the defects in a plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile).

Should Plaintiff choose to submit an amended complaint in response to this Memorandum-Decision and Order, he must set forth a short and plain statement of the facts on which he relies to support his claim that the Defendants engaged in misconduct or wrongdoing that violated his constitutional rights. Plaintiff is advised that any amended complaint will completely replace the prior complaint in this action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference. Plaintiff is forewarned that, if he

fails to submit an amended complaint within thirty days of the filing date of this Memorandum-Decision and Order, the Court will, without further order, dismiss this action without prejudice pursuant to §§ 1915(e) and 1915A for failure to state a claim upon which relief may be granted.

## VI. MOTIONS FOR COUNSEL AND INJUNCTIVE RELIEF

Based on the Court's decision preliminarily dismissing the Complaint, Plaintiff's Motion for Counsel and Motion for a Preliminary Injunction are denied as moot. In the event that Plaintiff files an amended complaint in compliance with this Memorandum-Decision and Order, he may also renew those motions.

## VII. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's IFP Application (Dkt. No. 6) is **GRANTED**;[7] and it is further

**ORDERED**, that the Clerk provide the Superintendent of the facility designated by Plaintiff as his current location with a copy of Plaintiff's Inmate Authorization Form (Dkt. No. 7), and notify him/her that this action has been filed and that Plaintiff is required to pay to the Northern District of New York the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915;[8] and it is further

---

[7] Although his IFP Application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[8] "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." Cash, 2010 WL 5185047, at *1. "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." Id. (citing 28 U.S.C. § 1915(b) and Harris v. City of New York, 607 F.3d 18, 21 (2d Cir. 2010)).

**ORDERED**, that the Clerk provide a copy of Plaintiff's Inmate Authorization Form (Dkt. No. 7) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED**, that Plaintiff's claims against the Chenango County Sheriff's Office are **DISMISSED with prejudice**; and it is further

**ORDERED**, that the Clerk terminate Chenango County Sheriff's Office as a defendant and add Chenango County and the Commissioner of Corrections as defendants; and it is further

**ORDERED**, that if Plaintiff wishes to proceed with this action, he must file an amended complaint as directed above **within thirty days** from the filing date of this Memorandum-Decision and Order; and it is further

**ORDERED**, that if Plaintiff timely files an amended complaint, this matter be returned to the Court for further review; and it is further

**ORDERED**, that if Plaintiff fails to timely file an amended complaint as directed above, the Clerk shall enter judgment indicating that this action is **DISMISSED without prejudice** without further order of this Court pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted. In that event, the Clerk is directed to close this case; and it is further

**ORDERED**, that Plaintiff's Motion for Counsel (Dkt. No. 3) is **DENIED as moot without prejudice to renew**; and it is further

**ORDERED**, that Plaintiff's Motion for Preliminary Injunction (Dkt. No. 4) is **DENIED as moot without prejudice to renew**; and it is further

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States

District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with all requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of this action**; and it is further

**ORDERED**, that the Clerk shall serve a copy of this Memorandum-Decision and Order on Plaintiff.

**IT IS SO ORDERED.**

DATED: September 11, 2018
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge